Next case is Henver 06-5022, Industrial Door against the United States, Mr. McBride. May it please the Court, my name is Anthony McBride, I represent Industrial Door in this appeal. The issue before the Court is contract formation with the United States and the elements of formation of that contract, I don't think are an item that's really in dispute in this appeal, I think it's really an application of the facts to those elements. But be that as it may, the elements are mutuality of intent to contract, lack of ambiguity in the offer and acceptance, consideration and then actual authority or ratification on the part of the government representative. Now the Court below granted summary judgment to the Smithsonian, to the government, on only one aspect of that test and that was on the mutuality of intent to contract. Specifically the Court below held that there was no unambiguous offer. The Court did hold that there was acceptance but that there was no unambiguous offer. And we believe that was his error. This case arose based on a solicitation that was issued by the Smithsonian. And Industrial Door believed that that specification, that solicitation was unduly restrictive of competition because of the qualification requirements for a specific portion of the work to be performed on that project. One quick question before you get in. Early on in the papers it said that one of their defenses was that this case was not, this contract was not covered by federal funding, it was by private funding from the Smithsonian. And I didn't see anything further on that. Whatever happened to that? If it was private funding, then why would it be proper in the Court? Well, there was an order, and I believe it's in the joint appendix of the Court below, that found that this was, that the Court of Federal Claims did have jurisdiction over this matter because it was a contract issue and that issue went away. It went away. Yeah, that's not here today. So we are assuming this is federal funding? Well, I don't think that's really the issue any longer. I think what happened was we had a protest, and then there was a settlement of that protest. Now, whether there was an issue as to whether that protest could have been dismissed by the government on that theory was never reached because instead of going that route, the government negotiated the settlement. I see.  Okay. All right. Mr. McBride, the question I was going to ask you is this. If you turn to the offer, this appendix, page 569? 569? Yes. That is the offer, correct? That's confirmation of the telephone conversation. I believe it's what was offered in the telephone conversation of that day. Okay. And the dispute here is over the language here in the middle that industrial door contractor satisfies the door manufacturer experience requirements as set forth in the solicitation, correct? Yes. Now, if you turn to the solicitation, and I think it's appendix, page 292? The operative paragraphs? Yes, sir. 292, is that the portion of the proposal, I guess? Yes. There are three types of hanging doors. My specific question is, what are the door manufacturer experience requirements set forth in the solicitation? Can you point me specifically to the portions of the solicitation that contain the door manufacturer experience requirements? Yes. 292 is one of them. Page 292, at the top of the page, section A, B, and C. A, B, and C. Those are the original requirements for individually motor-operated horizontal sliding hanger doors. Now, none of those three paragraphs are specific to any door types, correct? I believe that these three requirements are specific. There are three different sections that have similar requirements. I mean, A talks about the door manufacturer must have experience in the design of large aircraft sliding hanger doors for over 35 years. No door specified. No door type specified. That's correct, except for sliding, yes. Paragraph B, written evidence will include at least 30 hanger door installations made by their company. No specific experience in any specific door set forth. That's correct. Paragraph C, the certification that they will design and fabricate 90% of the systems, okay? That doesn't specify anything. So those three paragraphs, if those three paragraphs comprise the door manufacturer experience requirement, there's nothing in there that is specific to any door type, correct? Other than the word sliding, yes. But then in paragraph E, it says, in the middle of that paragraph, hanger door contract will not be approved, etc., etc., except the manufacturers have so qualified and been approved in writing as having the required experience in the type and size of doors required for this project. And there are three types of doors specified. Yes, sir. And your client, I think, concedes that it did not have experience in at least one of those three types of doors. No, it filed a protest that it was unduly restrictive of competition to require experience in those three types of doors, specifically the bracedock canopy door, which is an antiquated design. I mean, we're talking about huge hanger doors for airplane hangers. So your protest was that the government should not have required experience in all three types of doors. The protest was to allow my client to participate in the project. That was the goal. There's two different ways to do that. One of them is we're talking about a very experienced hanger door contractor, and one is to look at the experience that the contractor has, and based on that experience, qualify them to perform the entire project. And the only difference between the doors is two types slide, and then the third, the bracedock canopy door, goes up like that and has a braced arm to hold it up. But if your objective in the protest was to have the opportunity to participate in the bidding, then where is that addressed in the offer to resolve the protest that your client accepted? Could I back up very quickly? Yeah, please do. In the protest, there's either one or two results that would get my client where they wanted to be, which is to participate in the project. And one was the specification was unduly restricted because it required experience in both types, or it was unduly restricted because it required one contractor to furnish all types of doors. Either result would have allowed my client to participate in the project, and based on their argument, either result may not have been unduly restrictive of competition. But the offer to settle didn't address either of those points. The offer to settle, well, it did. The offer to settle found, based on the experience that was submitted in the protest, that industrial door was qualified. Well, it didn't say that. It says it satisfies the door manufacturer experience requirements, which could very well be paragraphs A, B, and C that we just talked about on appendix page 292. But that doesn't address whether that's not a concession that industrial doors is qualified to bid. Well, if we go back to the sentence that you pointed out on page 292 of the appendix in the middle of subparagraph E, the sentence reads, the hangar door contract will not be approved by the owner's representative except to door manufacturers, and this is the important part, door manufacturers who have so qualified and been approved in writing as having the required experience in the type and size of doors required for this entire project. That's what this sentence is. Industrial door satisfies the door manufacturer experience requirements as set forth in the solicitation. Yeah, but therein lies the ambiguity because your client did not have experience in the type and size of doors. I mean, you could stipulate all you want to that, but the fact remains that your client didn't have that experience. So it can't mean that. I disagree. And the reason I disagree is that based on experience in the sliding doors, you're qualified to do that based on canopy doors as well. It would be nice if it said that. Well, it says, based upon the information submitted, industrial door satisfies the door manufacturer experience requirements as set forth in the solicitation. And I understand why you would want to read it that way, and I'm not disagreeing that you couldn't read it that way. The problem at hand is that there's another way you can read this which is also reasonable, and that makes his offer ambiguous, does it not? Well, I don't think, with all due respect, I don't think that is a reasonable way to read it given the fact that it doesn't limit itself to any particular type of door. It satisfies the door manufacturer experience requirements as set forth in the solicitation. That means furnish all three doors. That means be qualified to furnish all three doors. That's all it can possibly mean because that's what the solicitation said at this point. It says in the next sentence, this determination is made pursuant to the modifications issued contemporaneously with the filing of this protest. That's a reduction of the time periods and all of that, right? Right, but it wasn't a removal of the requirement that one manufacturer furnish all three doors. So in order for this determination that industrial door contractor satisfies the door manufacturer experience requirements, the only thing it can mean is that based on their experience with the other two types of sliding doors, they are deemed to be qualified to provide all three doors. That's all it can possibly mean based on the totality of the circumstances of what happened leading up to this letter and this agreement. Can you point me to the modification where it addresses that question about the three types of doors? Well, it doesn't address it in the modification, and that's going to take me a moment to find that. You say it does not address it in the modification? No, the modifications that were issued on July, I think it was July 26 of 2000, they reduced the number of years and the number of doors, but it didn't alter the requirement that one manufacturer furnish all three doors. It didn't address that. Well, I thought that's what you just said, that it did address that. No, the modification did not address that. Well, then where was the change in terms of one manufacturer not having to produce all three doors? There was no change. That's what I've been arguing all along. There was no change, and that's why this sentence in the middle means that the Smithsonian and its technical people determined that industrial door was qualified. I speak in terms of the letter. The industrial door satisfied the door manufacturer experience requirements. That sentence means that the determination was that industrial door is qualified to provide all three types of doors, and that's locked in by the next sentence. It said it's made pursuant to the modifications, and the modifications didn't change the requirements that one manufacturer had to furnish all three doors. I see what you're arguing. Okay. Let's hear from the other side, and we'll save the rest for you because you're into your rebuttal time, or you can use it now if you like. Thank you. Could I just say one more thing? You can use your time any way you wish. Thank you. Since we're here on a granting of summary judgment to the government, industrial door is entitled to all inferences of fact, and I'd say it was also error for the court below not to consider the affidavit of Carl Dix, and specifically paragraph 10, 11, and 12, which talks about the fact that discussions were going on as to settlement and that the government's representative informed Mr. Dix that the technical people had reviewed industrial door specifications and found that they satisfied the experience requirements. Thank you, Mr. McBride. Ms. Moore. May it please the court, the court of federal claims correctly held that the parties did not enter into a contract for the prequalification of hangar doors. First, I'd like to correct a statement made by counsel for industrial door. The trial court was not obligated to grant any inference in favor of plaintiff industrial door in this case. Both parties cross-moved for summary judgment. They were both move-ins. Therefore, there is no non-move-in in this case. Neither party should receive the benefit of an inference. What you say is not my understanding of how that works. To grant summary judgment in favor of one party, you have to resolve the inferences in favor of the other side. Don't you? Whether or not they also moved for summary judgment? The case law I've seen says that it's in favor of the non-move-in. If they're both move-ins, then the court should look at all of the circumstances, all of the documents, which this could be. Well, he was the non-move-in on the motion that the government filed. That's correct. And that's the one that the court granted. That's correct. Even assuming the court grants an inference, the court correctly ruled that the parties should not enter into a contract. And that is because the offer, the purported offer, was ambiguous. That is the August 10th letter to industrial door from Mr. Lapiana of the Smithsonian Institution. What did it mean? I'm sorry, Your Honor? What did that letter mean? What did the letter mean? If not what he says it means. The letter referred to two sets of experience qualifications submitted by industrial doors, which were attached to its bid protest to the GAO. And the experience qualifications were they satisfied the modified requirements that a proposed contractor have 15 years of experience manufacturing those two types of doors. Their attachment to their protest did not include any experience requirements at all for the braced-arm canopy door. And there was a solicitation requirement that was never changed requiring that a door manufacturer furnish, i.e., manufacture all three types of doors, both motor-operated doors, horizontal and sliding, as well as the braced-arm canopy door. Why is it reasonable to interpret this as being limited only to the experience level of two of the three doors when the whole point of this was to settle a protest about being able to bid? Clearly the bidder had to qualify in some respects with respect to all three doors. And the protest was that that was unduly restrictive. That was an imposition that was inappropriate. And this was a resolution of that protest to give them the opportunity to bid. It doesn't spell it out. But why would anybody ever sign or agree to something like this if that was not the case? Well, the letter gave Industrial Door the opportunity to bid. And that is what it did. And it did bid. It bid down. It gave them the opportunity to submit a bid that would be rejected. A bid that should meet the contract specifications. Or for lack of experience. The letter did not waive, nor did it purport to waive, the contract requirement that the same manufacturer furnish all three types of doors. There is nothing in the record that addresses Industrial Door's bid protest. That's the experience requirement that pertains to those doors. What could it otherwise mean? If the court looks at Industrial Door's protest letter to GAO dated July 26th, it protests the requirement that the same manufacturer submit or make all three types of doors. The purported offer of August 10th doesn't address that disagreement that Industrial Door has with the solicitation. And in order for these two doors to be accepted, which let's say that the experience requirements for them were satisfying to the Smithsonian, it doesn't escape the solicitation requirement that they must make all three types of doors. And it doesn't address that. And therefore, the offer is ambiguous. What does it mean about the braced-arm canopy doors? That's left open. It's left hanging. The Smithsonian does not address that in its letter, its August 10th letter. It's confusing. What exactly does it mean? Down the road, Industrial Door, you know, the confusion alights again because their submission to their prime contractor, Hensel Phelps, does not include any of their own experience or their own submissions for this braced-arm canopy door. Instead, they've got a supplier submitting its qualifications for those doors. And the submissions were rejected because the same manufacturer, i.e. Industrial Door, has to make all three types of doors. And that brings home the fact that the offer was confusing. It was ambiguous. It didn't address something that was critical to accepting all three types of doors, not just two and leaving one open or leaving one out. But all three had to be made by the same manufacturer, so it cannot be divided out. And that's why the court held that the offer was ambiguous. And therefore, there is no mutuality of intent to contract. If the offer is ambiguous, then that right there negates the finding of the contract. And thus, the court was correct that the totality of the circumstances did not… Well, wasn't the third door, the obsolete, the obsolescent door, the ones that people didn't make anymore? They did. Well, they make them, but they're the old models. It was an older style of door, but that doesn't mean that… It wasn't that requirement? They were one of the central points of the protest? Yes. Yes, that is one of our points, is that the protest… Right. Not only did it say that the 35-year experience requirements for all three doors is too high. That's too restrictive of competition. It also said we also don't think we should have to make all three types of doors, the two-motor sliding and the braced-arm canopy, because they hadn't made the braced-arm canopy door in the past. And this says that's fine. You don't have to have… No, Your Honor, it doesn't, with all due respect. It doesn't address that issue at all. And also, to waive a contract requirement, the contract officer would have had to have deleted that requirement in the solicitation in any resulting contract. There's no documentation anywhere that the government intended to or did waive that important requirement. Well, this was in litigation, and this was the acceptance of a letter that did the same thing. I'm sorry, what was the acceptance of a letter? We don't need the ministerial act of amending the contract when we've got this document in front of us, and the court did, that, in effect, adjusts the contract, modifies the contract. But the letter also says, based upon the information supplied. In other words, it's looking at the experience requirements for two types of doors. It's, if anything, acknowledging just those two types of doors. It's not mentioning a third. Well, if you can do those more complicated doors, you can certainly do the others. We don't know that that's any less complicated than the other two types of doors. It could be more complicated. That's not really relevant. It's in the papers that those were simple. That was not a finding by the trial court, and I don't believe it's relevant to the issue, which is the August 10th letter didn't address the lack of experience for that type of door, nor did it address their contention that they shouldn't even have to manufacture that type of door. And that's critical. To have mutuality of intent to contract, all material terms must be expressly agreed to by both parties. And here, this critical element of the contract was not even mentioned by the offer, purported offer, the August 10th letter specifically. And then in their submission later on, again, they don't provide any of their own experience for that door. Also, the experience requirements are to be distinguished from technical requirements. Their submissions for the other doors were rejected because of technical requirements not having been met. So experience requirements simply having made the doors in the past is different from meeting the technical requirements, dimensions of each door, and the submissions were rejected for both. One, technical problems with at least two types of doors. Third, the fact that they didn't submit their own data for the braced-arm canopy door. So the government did not waive that. And that is evidenced again by the offer, which was not clear in its face. It didn't address that point. For these reasons, the court should affirm the decision of the Court of Federal Plans. Thank you, Ms. Moore. Mr. McBride, you have a minute or so. Okay. As far as whether the Smithsonian had an obligation to modify the solicitation, if they didn't, then that was evidence of their breach, nothing more. I'd also like to direct the Court's attention to page 292 of the appendix and also page 303 and 315. On 292, as we were before, if you look at paragraph D, and all of those pages have a paragraph D, it identifies three contractors that are deemed qualified. In paragraph E, it says that other manufacturers must meet the requirements of A, B, and C. So in other words, the letter of August 10th where the Smithsonian said that industrial doors satisfied the door manufacturer requirements, in essence added industrial door to the list of D, meaning you don't have to do A, B, and C anymore because you've already passed that test just like these other three contractors have. I think my time is up. I'm not going to be able to get any more reports out. Okay. Thank you, Mr. McBride. Thank you very much.